KAREN P. HEWITT
United States Attorney
MEGAN CALLAN
Assistant U.S. Attorney
California State Bar No. 230329
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-7120
Facsimile: (619) 557-5004
E-mail: Megan.Callan@usdoj.gov

Counsel for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REZA KHOSRAVANI, | Case No. 08cv0220-W (CAB) |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY TO REMAND TO UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES |
| v. | |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; EMILIO GONZALEZ, Director of U.S.C.I.S; PAUL PIERRE, District Director of U.S.C.I.S.; MICHAEL MUKASEY, U.S. Attorney General, | Date: May 12, 2008<br>Time: 10:30 a.m.<br>Crtrm: 7<br>The Honorable Thomas J. Whelan<br><br>**No Oral Argument Pursuant to Local Rule** |
| Defendants. | |

I

INTRODUCTION

This Court lacks subject matter jurisdiction over Plaintiff's Complaint because Plaintiff has not yet been interviewed in association with his application to naturalize and, as a matter of law, cannot be so interviewed until the results of his investigation are received and evaluated by United States Citizenship & Immigration Services ("USCIS"). Also, USCIS cannot adjudicate the application for naturalization until the investigation is concluded and Plaintiff is interviewed. Plaintiff's alleged bases for jurisdiction fail as a matter of law. For this reason, Defendants request dismissal under Federal Rule of Civil Procedure 12(b)(1). In the event that the Court concludes that it may exercise jurisdiction, Defendants move in the alternative for remand to USCIS for adjudication of the naturalization application after the completion of the background investigation and mandated applicant interview.

II

STATEMENT OF FACTS

Plaintiff's Complaint seeks relief in the nature of mandamus. He requests that the Court compel Defendants to move forward with processing Plaintiff's application for naturalization (Form N-400). See 8 U.S.C. § 1421; Complaint at 3. Plaintiff is a lawful permanent resident of the United States of America and is a citizen and native of Iran. Complaint at ¶ 1; Declaration of Janaki Rangaswamy, attached hereto as Exhibit A, at ¶ 19. Plaintiff filed his Form N-400 application for naturalization on September 20, 2006. Complaint at ¶ 4; Ex. A at ¶ 19. Defendants continue to process his application towards adjudication. Ex. A at ¶¶ 10-13, 19-22. However federal regulations prevent the interview of Plaintiff by USCIS and prevent adjudication of Plaintiff's application, until his background investigation has been completed by the Federal Bureau of Investigation ("FBI") and USCIS has received and evaluated the results of that investigation. 8 C.F.R. § 335.2(b).

On September 28, 2006, USCIS made a request for the initiation of a background investigation to the FBI. Ex. A at ¶ 20. Plaintiff alleges that after filing his application he made several inquiries to Defendants or their representatives, seeking information about the status of the processing of his application. Complaint at ¶ 5. Plaintiff alleges that Defendants responded that the application was being

1  processed and awaiting pending background investigation.[1] Id. Alleging that Defendants have failed
2  to process the application to adjudication, Plaintiff requests that this Court order that Defendants "move
3  forward" on his application and "schedule him for interview." Complaint at 3.
4      Plaintiff alleges that Defendants have illegally delayed the processing of his application. Plaintiff
5  claims that this Court has subject matter jurisdiction over his Complaint pursuant to 28 U.S.C. §§ 1331,
6  1361 (federal question subject matter jurisdiction and the Mandamus Act), as well as the Administrative
7  Procedure Act ("APA"), 5 U.S.C. § 701, and the All Writs Act, 28 U.S.C. § 1651.
8      As explained below, USCIS has not yet received the results of the necessary background checks.
9  As a matter of law, USCIS may not adjudicate Plaintiff's naturalization application or schedule Plaintiff
10 for an interview on his application until USCIS receives the results of the FBI investigation. Defendants
11 have, however, initiated the background investigation, Ex. A at ¶¶ 20, and Defendants remain prepared
12 to adjudicate Plaintiff's application as soon as the necessary information is received, Plaintiff has been
13 interviewed, and the information is evaluated. Id. at ¶¶ 21-22.

14                                      III
15                                   ARGUMENT
16
17     A.     THE COURT LACKS SUBJECT MATTER JURISDICTION
              1.    The Ongoing Background Investigation Precludes
18                  Administrative Examination

19     The federal regulations that govern the naturalization application process have been and continue
20 to be followed in this case. For this reason, there is no subject matter jurisdiction to issue the requested
21 writ of mandamus or for the Court to order that Defendant agencies "move forward" on his application
22 or "schedule him for interview." See Complaint at 3. After an application for naturalization is filed,
23 regulations require USCIS to "conduct an investigation of the [naturalization] applicant." 8 C.F.R.
24 § 335.1. Here, the parties agree that this process was begun. Plaintiff complains that it is not yet

25 ─────────────────────────
26     [1] On December 21, 2006, the FBI changed its policies governing when a background check request may be expedited. The new policy permits expedition in fewer circumstances than previously
27 available and no longer permits expedition solely due to the filing of a lawsuit by an applicant for naturalization. See Ex. A at ¶¶ 14-16. Security checks related to Plaintiff's background investigation
28 are still pending, Ex. A at ¶ 20 and USCIS Fact Sheet on Background Checks attached to Exhibit A. Additional time is required in order to complete the background investigation necessary to render a final determination on his naturalization application. See 8 C.F.R. § 335.1.

complete and asks the Court to order USCIS to proceed to the next step in the application process, the interview. However, the regulations govern this step as well.

> Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of investigation that a full criminal background check of an applicant has been completed.

8 C.F.R. § 335.2(b) (emphasis added).

This District has addressed the effect of this regulatory provision on similar cases requesting expedition. Yasmeh v. Mukasey, No. 08cv0024-H, slip op. (S.D. Cal. Apr. 1, 2008), attached as Exhibit D; Dairi v. Chertoff, No. 07cv1014-JM, 2007 U.S. Dist. LEXIS 80987 (S.D. Cal. Nov. 1, 2007), attached as Exhibit C; Zhou v. Chertoff, No. 07cv0102-LAB, slip op. (S.D. Cal. Mar. 14, 2007), attached as Exhibit B.

> Congress mandated in 1997 that the FBI investigate every applicant for naturalization and that USCIS await completion of those investigations before rendering a decision with respect to any applicant. See Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. In particular, beginning in fiscal year 1998 and thereafter, the then Immigration and Naturalization Service ("INS") (now USCIS) is prohibited from using any of the funds appropriated or available to it 'unless the [CIS] has received confirmation from the (FBI) that a full criminal background check has been completed.'

Zhou, No. 07cv0102, slip op., Ex. B at 3 (citation and footnote omitted).

Defendants may not schedule Plaintiff's interview until USCIS has received the results of the criminal background investigation from the FBI. 8 C.F.R. § 335.2(b). The parties agree that USCIS has not received those results. Complaint at ¶ 5-6; Ex. A at ¶ 20. As such, the Court does not have jurisdiction to order USCIS to proceed to the examination. See Yasmeh, Ex. D at 5-6; Dairi, 2007 U.S. Dist. LEXIS 80987 at * 5, Ex. C at 3; see also Ex. A at ¶ 21-22.

Congress provided a statutory vehicle for judicial review of naturalization applications in two specific instances, neither of which applies to Plaintiff's Complaint. First, 8 U.S.C. § 1421(c) permits judicial review only after USCIS has denied a petition for application for naturalization. The Ninth Circuit confirmed that judicial review under § 1421(c) demands, as prerequisite, a denial of the application by the agency. Bellajaro v. Schlitgen, 378 F.3d 1042, 1043-44 (9th Cir. 2004). "When [a naturalization] application is denied, § 1421(c) makes judicial review available for 'such' denial." Id. at

1046; see also United States v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004) (stating that § 1421(c) "allows unsuccessful naturalization applicants to ask the district court to review the [] denial"). Here, according to Plaintiff's own Complaint, no denial (indeed no final agency determination) has been made. In fact, there may never be a denial, as Plaintiff's application may yet be adjudicated by the agency in Plaintiff's favor. There is no dispute that USCIS has rendered no decision and has not denied Plaintiff's application here.

Second, 8 U.S.C. § 1447(b) permits judicial review of a pending naturalization application that has not been adjudicated by CIS "[i]f there is a failure to make a determination . . . before the end of the 120-day period after the date on which the examination is conducted." 8 U.S.C. § 1447(b). The parties do not dispute that here no examination has been conducted. Pursuant to 8 C.F.R. § 335.2(b), the examination has not been scheduled because the full criminal background investigation has not been completed and USCIS has not been notified of the results. Ex. A at ¶¶ 19-22. Neither does this Court have jurisdiction to order USCIS to conduct an interview of Plaintiff where the agency is precluded by regulation from such an interview. See 8 C.F.R. § 335.2(b).

### 2. The Mandamus Act Does Not Provide Jurisdiction

The Mandamus Act provides district courts with original jurisdiction of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, the availability of mandamus is limited. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring). "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)); see also Azurin v. Von Raab, 803 F.2d 993, 995 (9th Cir. 1986). Relief through § 1361 is only appropriate where the action to be compelled is nondiscretionary. 28 U.S.C. § 1361; Sung v. Ashcroft, 76 Fed. Appx. 138, 139 (9th Cir. 2003) (citing Kildare, 325 F.3d at 1084). Plaintiff's Complaint does not resemble those extraordinary cases in which the Ninth Circuit has held that "drastic" mandamus relief is appropriate. See, e.g., Barton v. United States District Court,

1 410 F.3d 1104, 1106 (9th Cir. 2005) (issuing a writ of mandamus to protect attorney-client privilege); Myers v. United States District Court, 620 F.2d 741 (9th Cir. 1980) (issuing a writ of mandamus to protect constitutional right to a jury trial).

Here, § 1361 does not give rise to jurisdiction because Plaintiff's claim is not clear and certain and the official's duty is not so plainly prescribed as to be free from doubt. The background investigation that is required in connection with Plaintiff's naturalization application is ongoing. 8 C.F.R. § 335.2(b); Ex. A at ¶ 20-22. Defendants have no duty to expedite a law enforcement background investigation because Plaintiff desires the results immediately. Defendants are completing their duty to process Plaintiff's application in accordance with law. Id. Also, Plaintiff has made no allegation supporting the conclusion that his petition is clear and certain as required. Because agency discretion is involved in the processing and evaluation of Plaintiff's petition, he is not entitled to relief under § 1361 and Plaintiff's claim should be dismissed for lack of jurisdiction.

### 3. The APA and 28 U.S.C. § 1331 Do Not Vest the Court With Jurisdiction

The APA and 28 U.S.C. § 1331 may confer jurisdiction on the Court where a person "suffering a legal wrong . . . or adversely affected or aggrieved" complains of agency action or inaction. 5 U.S.C. § 702. However, such a claim may only arise where the plaintiff "asserts that an agency failed to take a discrete agency action that [the agency] is required to take." Mustafa v. Pasquerell, 2006 U.S. Dist. LEXIS 8047 at * 8, 2006 WL 488399 at * 2 (W.D. Tex. Jan. 10, 2006) (citing Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004)). Plaintiff's allegation that his application has not been adjudicated since September 2006 fails to satisfy this standard. First, the processing of his naturalization application is ongoing. Ex. A at ¶¶ 19-22. Second, "Section 704 limits judicial review to only those, agency actions made reviewable by statute. The APA excludes from coverage those agency decisions which are . . . committed to agency discretion by law." See 5 U.S.C. § 701 (a) (2).

Plaintiff asks the Court to order the completion of his background investigation and schedule him for an interview. In fact, the FBI is working to complete Plaintiff's name check and background investigation. Ex. A at ¶ 20-22. USCIS cannot complete its review of Plaintiff's application, schedule him for an interview, or adjudicate the application until the necessary background checks are complete.

1  See 8 C.F.R. § 335.2(b). Judicial review under the APA of how, or how quickly, Defendants perform
2  this important national security function is unavailable in this case.

3  It is well-established that courts generally have no power to order the Executive to undertake a
4  particular investigation absent some statutory provision conferring this authority. See, e.g., United States
5  v. Ramos, 933 F.2d 968, 971 n.1 (11th Cir. 1991) (explaining that "[c]riminal investigations are an
6  executive function within the exclusive prerogative of the Attorney General's Office") (citation omitted)).
7  Where an agency possesses discretion regarding the manner and time of performance of its functions,
8  courts may only direct the agency "to take action upon a matter, without directing how it should act."
9  Norton, 542 U.S. at 64  (emphasis in original) (internal citation omitted). Here, Plaintiff's Complaint
10 admits that he has been informed that the processing of his application is pending, awaiting the results
11 of the background investigation. Complaint at ¶ 5. On such a record, where submitted evidence avers
12 that the necessary investigation is pending, APA review is unavailable.

13 "There is no statute or regulation which imposes a deadline for the FBI to complete a criminal
14 background check." Shalabi v. Gonzales, 2006 WL 3032413, at * 5, 2006 U.S. Dist. LEXIS 77096, at
15 * 15 (E.D. Mich. Oct. 23, 2006). Cf. Martinez v. Gonzales, 2006 WL 3477985 at * 3 (E.D. Va. Nov. 29,
16 2006) ("[C]ourts are ill-equipped to conduct the type of criminal background checks with which the FBI
17 has been tasked, and to conduct a hearing without the benefit of a completed background check 'would
18 contravene Congress's intent that an FBI background is to be completed prior to the adjudication of every
19 naturalization application.'") (quoting Shalabi, 2006 WL 3032413, at * 4).

20 The FBI's discretion in conducting immigration-related name checks is underscored by legislation
21 requiring action to reduce the length of personnel-related background checks. See, e.g., Intelligence
22 Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, § 3001(g), 118 Stat. 3638 (2004)
23 (requiring 90% of personnel security clearances to be completed within 60 days "to the extent practical").
24 Congress could have enacted deadlines for the performance of the FBI's immigration name checks and
25 could have subjected this process to judicial review. The congressional decision not to set such deadlines
26 indicates that the process remains well within the FBI's discretion and that the FBI's decisions regarding
27 when and how to complete background name checks are not subject to judicial scrutiny. Cf. Haig v.
28

1  Agee, 453 U.S. 280, 300 (1981) ("congressional acquiescence may sometimes be found from nothing
2  more than silence in the face of an administrative policy").

3       Such judicial deference is particularly appropriate in security and immigration matters, both of
4  which are implicated in this case.  See, e.g., INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999)
5  ("[J]udicial deference to the executive branch is especially appropriate in the immigration context where
6  officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'")
7  (quoting INS v. Abudu, 485 U.S. 94, 110 (1988)); Agee, 453 U.S. at 292 ("Matters intimately related to
8  foreign policy and national security are rarely proper subjects for judicial intervention.") (citation
9  omitted); Paradissotis v. Rubin, 171 F.3d 983, 988 (5th Cir. 1999) ("In matters like this, which involve
10 foreign policy and national security, we are particularly obliged to defer to the discretion of executive
11 agencies interpreting their governing laws and regulations."); Voinche v. FBI, 940 F. Supp. 323, 328
12 (D.D.C. 1996) ("Furthermore, courts generally have deferred to agency expertise in national security
13 matters.") (citing Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir.1984)).

14     4.    The All Writs Act Does Not Establish Jurisdiction

15      The All Writs Act provides that Article III courts "may issue all writs necessary or appropriate
16 in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C.
17 § 1651. "The Supreme Court has explained that only 'exceptional circumstances amounting to a judicial
18 usurpation of power will justify the invocation of this extraordinary remedy.'" United States v. Ye, 436
19 F.3d 1117, 1121 (9th Cir. 2006) (quoting Will v. United States, 389 U.S. 90, 95 (1967)).

20      The Ninth Circuit applies a five-factor test to determine whether mandamus relief may arise under
21 § 1651, and the factors illuminate the inapplicability of All Writs Act relief to Plaintiff's Complaint,

> (1) whether the petitioner has no other adequate means to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law of first impression.

26 Ye, 436 F.3d at 1121-22 (citing United States v. Amlani, 169 F.3d 1189-94 (9th Cir. 1999)); see also
27 United States v. United States Dist. Court, 464 F.3d 1065, 1068-69 (9th Cir. 2006).
28 //

Applied to Article II conduct, the use of the All Writs Act is exceedingly rare. See Confederated Tribes v. Bonneville Power Admin., 342 F.3d 924, 930 (9th Cir. 2003); Public Util. Comm'r v. Bonneville Power Admin., 767 F.2d 622, 630 (9th Cir. 1985) (explaining that the "preemptory writ of mandamus has traditionally been used in federal courts to review nonfinal district court orders and is used only in exceptional circumstances"). "The circumstances that will justify our interference with non-final agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts." Confederated Tribes, 342 F.3d at 930 (quoting Public Util. Comm'r, 767 F.2d at 630).

Plaintiff does not request that the Court issue a writ to protect the jurisdiction of the Court or to effectuate the Court's judgment, nor may his Complaint be read to pray for the relief that may be properly granted by the All Writs Act. See id.; see also Kerr v. United States Dist. Court, 426 U.S. 394, 402-03 (1976). The All Writs Act does not provide this Court with jurisdiction over the subject matter of Plaintiff's Complaint or permit the Court to order the requested relief.

### B. ALTERNATIVELY, PLAINTIFF'S CASE SHOULD BE REMANDED TO USCIS FOR AGENCY ADJUDICATION

Applications for naturalization are governed by the statutory framework of 8 U.S.C. § 1421 et seq. USCIS is the federal agency that is delegated authority to investigate naturalization applicants and adjudicate their applications. See 8 U.S.C. § 1446. The Secretary of the Department of Homeland Security [2] has "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a).

"Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization." 8 U.S.C. § 1446(a); see also 8 C.F.R. § 335.1 ("Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records."). In 1997, Congress mandated that the FBI

---

[2] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the naturalization program. 6 U.S.C. § 271(b)(2). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d). Here, Defendants refer to the "Secretary's" discretion, when statutory text may yet refer to "Attorney General" discretion.

1  conduct investigations with respect to every naturalization application and that USCIS await the
2  completion of such investigations before rendering a decision on such applications. See Departments
3  of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act of 1988, Pub.
4  L. No. 105-119, 111 Stat. 2448, tit. I. Accordingly, the regulations were amended to require that the
5  agency await the completion of the FBI investigations before conducting the initial interview of an
6  applicant. See 63 Fed.Reg. 12979, 12987-12988 (Mar. 17, 1998) (amending 8 C.F.R. § 335.2).

7  A naturalization applicant (whose application remains pending with USCIS as does Plaintiff's
8  here) may request a hearing before the district court if "there is a failure to make a determination" on the
9  application "before the end of the 120-day period after the date on which the examination is
10  conducted . . . ." 8 U.S.C. § 1447(b). Although the word "examination" is not defined, courts have
11  construed it to mean the actual interview conducted by a USCIS officer. Raufi v. Chertoff, 434 F. Supp.
12  2d 813, 814-15 (S.D. Cal. 2006); see also Shalabi, 2006 WL 3032413, at *4, 2006 U.S. Dist. LEXIS
13  77096, at *11 ("The USCIS's regulations further support the interpretation that an 'examination' occurs
14  at the time of the interview for the purpose of § 1447(b)."). Defendants urge that § 1447(b) is not
15  applicable to this Complaint because the examination is not complete, but the statute is informative
16  because it provides that the district courts may remand complaints arising from a delay in a naturalization
17  application to the USCIS. See 8 U.S.C. §1447(b).

18  When § 1447(b) does apply, this Court has the jurisdictional authority to either (1) make its own
19  determination as to whether Plaintiff has satisfied all of the requirements for citizenship, or (2) remand
20  the matter to USCIS with instructions to conclude its processing of the N-400 and make its determination.
21  8 U.S.C. §1447(b); Hovsepian, 359 F.3d at 1160. Assuming arguendo that the Court has subject matter
22  jurisdiction over this Complaint, Defendants contend that where the agencies have not adjudicated the
23  application and the investigation has not yet been completed, as is the case here according to Plaintiff's
24  Complaint, the Court should remand the matter to the agency. See Ex. B; Stepchuk v. Gonzales, 2006
25  WL 3361776, 2006 U.S. Dist. LEXIS 84321 (W.D. Wash. Nov. 17, 2006); Shalabi, 2006 WL 3032413,
26  at * 4 ("[A] district court, like USCIS, is not in a position to decide an application for naturalization until
27  the FBI completes the required . . . investigations.").
28  //

1   When the pendency of an FBI investigation precludes the interview of an N-400 applicant, remand permits the agency to render a decision in the first instance based upon a complete administrative record. See Khelifa v. Chertoff, 433 F.Supp. 2d 836, 843-44 (D. Mich. 2006) (noting that CIS is better equipped than the federal courts to evaluate background investigation information, conduct follow up where necessary, and complete adjudications).  In addition, remand does not deprive an applicant of judicial review, if an application is ultimately administratively denied.  See 8 U.S.C. § 1421(c) (permitting de novo judicial review of a denied application for naturalization).  This approach favors basic principles of administrative review as well as judicial economy because if judicial review is ultimately required under § 1421(c), the Court will have the benefit of the final and complete administrative record.

In Plaintiff's case, USCIS undertook the processing of his N-400 immediately. Ex. A at ¶ 19-20. In addition to reviewing the information provided by Plaintiff, USCIS complied with agency directives and instituted a series of law enforcement checks. See id.; see also USCIS Fact Sheet at Ex. A. Although Defendants urge that no jurisdiction obtains over Plaintiff's Complaint, if the Court determines that jurisdiction is appropriate, then Defendants submit that remand is the procedure that honors the congressionally mandated administrative process applicable to naturalization applications, favors judicial economy, and does not deprive Plaintiff of judicial review in the event that, after a complete and requisite background check, his application is denied, see id. at § 1421(c).

## IV
## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. In the alternative, the Court should remand Plaintiff's Complaint to USCIS for adjudication after the completion of the necessary background investigation.

Dated: April 7, 2008

Respectfully submitted,
KAREN P. HEWITT
United States Attorney

s/ Megan Callan

MEGAN CALLAN
Assistant U.S. Attorney
Counsel for Defendants
Email: Megan.Callan@usdoj.gov